ODOM, J.
 

 Plaintiff and defendant own in indivisión, in the proportion of six-sevenths to plaintiff and one-seventh to defendant, two tracts of land in Lafourche parish each fronting on Bayou Lafourche; one being a sugar plantation known as the “Ariel Plantation,” which has a frontage on said bayou of
 
 9%
 
 arpents with a depth of 80< arpents, except the lower one arpent, which has a depth of only 62% arpents. The other tract, known as the “Gaza Tract,” which is not contiguous to the “Ariel Plantation” but is separated therefrom by three arpents, has a frontage on said bayou of 2 arpents with a depth of 62 arpents.
 
 *745
 
 These tracts are on the left descending bank of the bayou and together contain approximately 800 arpents.
 

 Plaintiff brought this suit to have the property partitioned by licitation as authorized by article 1339 of the Civil Code, alleging that it was not divisible in kind due to its dimensions, character, and nature; that a partition in kind would result in a diminution of its value and loss and inconvenience to. the co-proprietors.
 

 Defendant set up in her answer and now contends that the property sought to be partitioned is susceptible of division in kind without a diminution in its value and without loss or inconvenience to either of the proprietors. Defendant further alleged: “That a partition by licitation at this time would result in a serious pecuniary loss to respondent because of the depressed value of sugar properties in this neighborhood.”
 

 There was judgment recognizing plaintiff and defendant as co-owners of the property in the proportion of six-sevenths to plaintiff and one-seventh to defendant and ordering the same partitioned in kind.
 

 Plaintiff appealed.
 

 When two or more major persons who are present own property in common, a partition thereof may be made by them in such form and by such act as they may agree upon. If, on the contrary, all the co-owners are not present, or if there be among them minors or persons interdicted, or if those present and of age do not agree to the partition or the manner of making it, it shall be made judicially, in the form prescribed by the Civil Code. Civ. Code, art. 1322 et seq. Each of the co-proprietors may demand in kind his share of the property (Civ. Code, art. 1337), and this method of partition is favored by our law. Every partition should be made in kind if the property be susceptible of division, unless such division would result in inconvenience or loss to the co-owners. Kaffie et al. v. Wilson, 130 La. 350, 57 So. 1001; Hoss v. Hardeman et al., 156 La. 371, 100 So. 532.
 

 But the right of a co-owner to partition property which he holds in common with another is absolute. No one can be Compelled to hold property with another (Civ. Code, art. 12S9), and if the property is not divisible in kind, or if a division in kind cannot be made without loss and diminution of its value, the court must orden it sold at public auction at the instance of any of the parties in order to effect a partition. It follows therefore that even though a partition by licitation would result in pecuniary loss to one of the co-owners because of the depressed value of the property at the time the partition is demanded, the sale must be made.
 

 Defendant, who owns only a one-seventh interest in this property, suggests that she will be at a great disadvantage in case the property is sold at auction as a whole for the reason that she is not financially able to purchase the entire property. Even so, it is not within the province of the court to say when property shall be partitioned. A partition may be demanded at any time regardless of conditions, and when demanded the only function of the court is to determine the method of making it.
 

 Plaintiff contends that this property is not divisible in kind, and further that, if it is, it cannot, under the law, be divided as ordered by the lower court. These contentions are sustained both by the facts and the law.
 

 That the property is not susceptible of a division in kind is made manifestly clear by the report of the experts appointed by the court to examine and appraise it, and by the testimony of the witnesses who were called
 
 *747
 
 at the trial. It is further shown by the very nature'of the property itself.
 

 . The experts found and the witnesses testified that the two-arpent, or “Gaza Tract,” which is not contiguous to the main tract, the “Ariel Plantation,” has no improvements upon it, has not been cultivated in some four or five years, and is grown up in weeds. The main- plantation is now in cultivation and is fairly well improved, having upon it buildings which the experts appraised as follows: Main plantation residence, $5,000; store and connected residence, $2,000; twenty-three cabins, $2,000; overseer’s residence, $400; stable and tool shed, $250'; sawmill, $800; and scale and cane hoist, $200; total, $10,650.
 

 They appraised the land without the improvements at $1,700 per front arpent, or $19,-975, making a total valuation of $30,625. In valuing the main plantation residence, they took into consideration the fact that it was subject to the life usufruct of Mrs. Justine Folse Toups. Mrs. Toups has since died, and it is probable that if the same experts were now called upon to appraise it, they would value it much higher. From what the witnesses say, it is a very large, commodious plantation residence and should be in good condition, as defendant’s husband says he repaired it in 1920 at an expense of $15,000. This residence is located on the front of the plantation practically midway between the upper and lower boundary lines of the tract. While the testimony is indefinite as to the exact location of the other improvements, it is clear enough that they are not equally distributed over, the land. The witnesses say that the lower one-third of the main plantation has no improvements at all. The testimony as a whole indicates that practically all the cabins as well as the overseer’s residenee¡ hnd the store and connected residence, áre on the upper side'of the tract.
 

 The experts, the witnesses, and the district judge all seem to have proceeded upon the hypothesis that there might be carved out of the land a tract which would represent in value one-seventh of the whole which could be
 
 set apart
 
 to defendant as her share. After stating that defendant was entitled to one-seventh and plaintiff to six-sevenths of the property, the experts in the report to the court said:
 

 “In attempting a division in kind of this property in the above ratio, the following are suggested
 
 as possible methods
 
 of working out a division and settlement:
 

 “The two arpent tract does not represent a fair one seventh value of the total property, however, we believe that! with a cash consideration the
 
 two arpent tract could be transferred4o Mrs. Lelande,
 
 thereby working out a basis of settlement which in our opinion would not impair or decrease the value of the Ariel Plantation proper.
 

 “As another method of settlement
 
 it is possible to allot to Mrs..T. D. Lelande
 
 a tract of land 1% arpents front, more or less, on the up: per side of the main plantation,
 
 and that she at her expense, move the store and connected residence on this property.
 

 “A one seventh portion may not be taken from the lower side of the large tract owing to the location of the main plantation residence ; for a like reason it would not be practicable to carve a one seventh portion from the upper side owing to the location of the store and connected residence. Should it not be possible to effect some such arrangement, we are of the opinion that it is not practical to divide this property in kind.” (Italics ours.)
 

 The district judge, after commenting on the report of the experts and the testimony of the witnesses, said the partition should be
 
 *749
 
 made in kind in either one of the following ways:
 

 We quote the comments as follows:
 

 “Forming a lot containing
 
 Yr of
 
 the value of the whole property:
 

 “A. At the upper boundary as suggested by the report of the experts;
 

 “B. At the. lower end by the segregation of a
 
 Yi ot
 
 the total ascertained value, in land frontage, including such cabins and their value as may fall thereon at a fair value.
 

 “C. Including the Gaza Tract plus a sufficient frontage from either the upper or lower end of the Ariel plantation with cabins thereon to amount to the
 
 Y
 
 value of the whole property.”
 

 The court ordered the property partitioned in kind, appointed a notary and experts to make the division, and ordered: “That said notary, assisted by said experts,
 
 if so they are able, prepare more than one plan of partition, allocating
 
 to the major co-owners six sevenths of the value of the entire mass and to the minor co-owner one seventh of the said value.” (Italics ours.)
 

 The judgment further recites:
 

 “Let such plans, if more than one be found possible and fair to both co-owners, be separately numbered and exhibited to the co-owners for inspection and (unless they mutually agree between themselves), let. the co-owners draw lots between themselves to determine which of the co-owners shall draw by chance from a hat one of several numbers placed therein,
 
 each of which shall identify one of the several submitted plans of partition."
 
 (Italics ours.)
 

 As will be seen from the report of the experts, they were of the opinion that unless a portion of this property representing one-seventh of its value
 
 could be carved out and set apart
 
 to defendant as her share, the property could not be partitioned in kind. The testimony of the witnesses is to the same effect, and according to the judge’s comments which are in the record and his final judgment, he held the same view.
 

 But to adopt the plan suggested by the experts and the witnesses and to make the division as ordered by the court would be contrary to and in violation of the rules and regulations specifically laid down'in the Code for making judicial partitions.
 

 When co-owners cannot agree upon a partition of the property which they own in common, a judicial partition becomes necessary, and if one of them demands it by suit, it then becomes the duty of the judge before whom the case is tried to determine the method of making itthat is, whether it shall be made in kind or by licitation. Civ. Code, art. 1336. If it be found that the property is divisible in kind, experts should be appointed to appraise it and divide it into lots (Civ. Code, art. 1361), which lots are afterwards drawn for by the parties (article 1367). Once it is determined that the property is to be divided in kind, the function of the experts is to form the lots, and when they have done so, if their findings are finally approved by the court, the partition is proceeded with by the drawing of lots.
 

 In judicial partitions it is not within the province of the experts to suggest that a certain part or parts of the property be set apart or allocated to one of the co-owners, nor is it within the province or power of the Judge to order that such be done. The lots are set apart to the different co-owners by chance, by drawing for them.
 

 There must be as many lots as there are shares or roots involved. In the present case defendant owns one-seventh and plaintiff six-sevenths of the property. If it is to be
 
 *751
 
 divided in kind, there must be seven lots formed, one to be drawn by defendant and six by plaintiff. Kaffie et al. v. Wilson et al., 130 La. 350, 57 So. 1001; Wells v. Files, 136 La. 126, 139, 66 So. 749; Jacobs v. Jacobs, 126 La. 365, 52 So. 543; Amite Bank & Trust Co. v. Singleton et al., 135 La. 185, 65 So. 102; Hoss v. Hardeman, 156 La. 374, 100 So. 532, 533.
 

 In the case of Hoss v. Hardeman et al., supra, an attempt was made to set apart certain lots to some of the co-owners and some to others, and we said there:
 

 “The judgment appealed from is erroneous, however, in ordering the experts to set aside certain specified lots to some of the defendants and to select an equal number of other lots for allotment to the other co-owners. The law requires the lots to be formed by experts and drawn for by the co-owners. Civil Code, art. 1367.”
 

 In Rhodes v. Cooper et al., 118 La. 299, 42 So. 943, 944, the court said:
 

 “The evidence leaves no doubt that the shares were assigned, or attributed, as the French say, and not allotted, and' there can also be no doubt that this was a fatal irregularity.”
 

 In each of the latter two cases minors were involved, but the same applies in judicial partitions where all'the parties are majors. The drawing of lots is an essential formality in judicial partitions. It is not suggested by any one that this property can be formed into seven lots of near equal value without a prejudicial cantling of tenements, which is prohibited. '
 

 The Gaza or two-arpent tract was appraised at $3,400, which is $1,110 less than one-seventh of the value of the whole. This tract could be formed into one lot by supplementing its value with money. The main tract has a frontage of 9% arpents on the bayou. It would not be practical to subdivide it without giving to each lot some frontage on the bayou along which the road runs. If it were divided into six lots of equal arpentage, each lot would have a frontage of approximately 1.62 arpents with a depth of 80 arpents. The defendant might draw one of the interior lots, the result being that she would have a narrow strip of land, 1.62 arpents wide and 80 arpents long, the main plantation would be broken up into three tracts, the plaintiff owning two and defendant one. Then there is the main plantation residence which is worth more than one-seventh of the whole property, and it is situated on the front. There is one other building worth $2,000, another worth $400, a sawmill worth $800, and twenty-three cabins not equally distributed over the land.
 

 The property will have to be partitioned by Iicitation. We think, however, that the two tracts should be sold separately.
 

 For the reasons assigned, the judgment appealed from is affirmed in so far as it recognizes the plaintiff and defendant as owners of the property in indivisión in the proportion of six-sevenths to plaintiff and one-seventh to defendant. In so far as it orders the property partitioned in kind it is reversed, and it is adjudged that said property is not divisible in kind, and it is now ordered and decreed that the same be sold at public auction by the sheriff of Lafourche parish for cash to the highest bidder to affect the partition, the two tracts to be sold separately. It is further ordered that the case be remanded to the' district court for the completion of the partition according to law, costs of the appeal to be paid by defendant-appellee, all other costs and charges to be paid out of the mass.